The next case, all four arguments, is in interest for T.J.D. The next case, all four arguments, is in interest for T.J.D. Section 3-5 of the Illinois Sex Offender Registration Act allows a juvenile adjudicated offender to petition the court for removal from the registration if it proves, among other things, that they pose no risk to the community by a preponderance of the evidence. The crux of the argument this afternoon is that a finding of no risk is simply not possible, and a strict interpretation requiring no risk strips this statute of its legislative intent. In this case, we're able to look at the legislative intent to find out what that purpose is by looking at the legislative history, and specifically the debates the legislature had while discussing this statute. There, we learned that the legislature wanted this section to be utilized as a review of the minor juvenile adjudicated offender's compliance with the services they were required to do, and their likelihood of reoffending. Further, the legislature indicated that they wanted the judiciary to have discretion in these cases, as opposed to the previous harsh bright-line rule. Unfortunately, the implementation of a no-risk standard takes away discretion and inadvertently imposes that bright-line rule. Well, when I read your attachment of the legislative history, I don't remember seeing any comment by members of either house of the General Assembly indicating that the no-risk standard was an issue. They didn't really discuss the specifics of no risk. Really, they were discussing what they wanted this statute to accomplish. But you're correct, Your Honor, there was no discussion of should we use no risk, should we use something else. That's just the verbiage they used. We obligate, since no risk is pretty clear as far as a standard, a substantive standard, a quantitative standard, why wouldn't we be obligated to follow that standard as opposed to a more different standard like substantial risk or something like that? Well, in this case, Your Honor, the term no risk, and when you look at the rest of the conversation, it doesn't go with what the legislator was stating about what the intent of the statute was. So I think in interpreting the statute, even though no risk is plain, we can look past that to see does it meet the legislator's intent, and in this case, it does not. And we know it's not possible. In this case, there were two experts that did investigations, they did evaluations, and they provided reports to the court. Both of them found the petitioner in this case to be low risk. The state's expert went on further and said the lowest possible risk and said unequivocally a finding of no risk is not possible. She further went on to say that no risk is impossible because there's a general risk, at least a risk for the general population. So in this case, an expert will never find anything lower than low risk. And the reason that's important is because while the state's going to argue there are several elements for the court to consider in these cases, the expert is the first one listed. In this case, it was given the most weight. We know it was given the most weight because when the court made its decision, the court said both experts found him to be low risk. The court is unwilling to give that statutory direction a lesser meaning. So while there may be other elements to consider, the court clearly focused on this element of what the expert's opinion was. The state's also going to come up and say that the petitioner isn't required to provide expert opinions, and they're going to cite Henry Rufus T., which with court held you don't have to provide an expert opinion. In that case, the court was really focusing on whether or not the court was required to pay for a person's expert opinion. They held that you did not have to, and that because the court didn't have to pay for it, the person didn't have to submit an expert opinion. But in giving their decision as why they denied the petition in that case, one of the reasons they used is that they didn't present an expert opinion. So it's kind of a double-edged sword. Do I present an expert opinion that says I'm low risk even though I have to prove no risk, or do I not present an expert opinion, and then the court can use it against me for not presenting an expert opinion? In this case, like I said, while there's other elements that the court is to consider, the no risk nature is never going to be given by an expert. They simply can do it, and they won't do it. Again, no risk is unequivocally impossible. So in this case, there's never been a reviewing court to interpret or give direction on how lower courts are to interpret this statute. So in this case, we're asking that the court provide direction on how the circuit courts are to interpret this. Because if it stays as is, the statute becomes, frankly, useless. And just one brief additional topic. The circuit court, within its order, without expressly saying it, tended to agree. Specifically, the court held, the statute clearly requires the court to make a finding that the applicant presents no risk to the community. The court must give that language meaning. No clearly means something different than low. The court believes counsel's arguments that it is very difficult, if not an impossible burden, to be persuasive. However, that is a cry to change the legislation. This court declines to do so. So in this case, again, we have no other reviewing court order to look at how to interpret this statute. So again, we're asking this court to do that. That issue was challenged on a motion to reconsider, which wasn't directly addressed. But the court did allege that the petitioner lacked credibility. Specifically, the court held that his testimony appeared to be well-rehearsed and inconsistent. When challenged, is it well-rehearsed or is it inconsistent? Those two things don't seem to jive. If something's well-rehearsed, it's going to be well-rehearsed and consistent. Adversely, if it's not well-rehearsed, is it inconsistent? Some of the people I represented, not necessarily. But you're correct, the court did find that. We obviously don't agree with that assessment. That's one of the things we would challenge on our second issue. So the first issue is, no risk is impossible. The second issue is, even looking at the existing factors, the court erred in denying the petition to terminate. In this case, when you look at all the factors, the evidence that was provided, like I mentioned, the two experts, both experts, one for the petitioner, one for the state, both agreed and unequivocally stated, lowest possible risk to the community, and they both agreed that he should be removed from the sex offender registry. There was also an additional witness who was a counselor and therapist for the petitioner for several years, who testified that he was no risk to the community. Other than that, there was no evidence presented that indicated otherwise. So in looking at the legislative intent to review the petitioner's compliance with services, as well as his likelihood to re-offend, in looking at the history of compliance with services, the report used the word exemplary. There was no evidence indicating otherwise that the petitioner did everything he was asked to do. In their brief, the state even concedes that point and says, to his credit, the petitioner did everything he was asked to do. So as far as that issue goes, there's no question, no evidence even countering that. Now as far as, again, the likelihood to re-offend, all we have are his history, since this incident, no criminal history, no disciplinary problems in school, successfully graduated from high school, is now in college. There's no other problems. Again, we understand that the actions that gave rise to this are very serious, and we don't minimize that. But in looking at the legislative intent, and looking at how someone moved past this, I don't think there was any evidence indicating anything other than successfully complied with all the services, and there's no evidence indicating that he is likely to re-offend. So, in this case, we're asking this court to reverse the trial court's decision, remand it with directions as to how to properly interpret this statute, and to grant the petition to terminate sex offender registration. Do you have any other questions, Ron? I don't believe we do. Thank you. May it please the court. My name is Sharon Shanahan. I represent the people of the state of Illinois. This case was briefed by Mr. Daley. Mr. Daley is in Chicago. His father has undergone quite serious surgery, so hopefully I'll be able to properly present the argument to this court. This case began when, by his own admission, a respondent repeatedly molested two little girls between the ages of two and four. He was 13 at the time. He was charged with aggravated criminal sexual assault for putting his penis in the mouth of the two-year-old, which would have been a Class X felony. He told her his booty was like Popsicle and she should lick it. I'm sorry, Your Honor, that's my phone. I apologize. I have physical therapy that I'm supposed to do six times a day. That's how I remember to do it. We can run, but we can't hide. He told her he tried to get the treasure out of her booty and she indicated between her legs and buttocks. Had he been just a few years older, he would have been spending a long time in prison. He said he did this because they were just there. It was easy. And he figured he'd get away with it. This case came about from his request to be removed from sex offender registration. Made just a couple of months after he finished probation. I think he was about 19. He's raised two issues. One is that requiring a finding that a person posed no risk to the community is impossible, since the most any psychologist would say is that it's a low risk. And the second issue is that the trial court's decision is manifestly erroneous because both the psychologist reports say that the same reason. They look only to the reports of the psychologist. Now there are statutes which rely solely on a psychologist's report in order to determine whether a person is at risk to a community. The Sexually Dangerous Persons Act comes to mind. But this is not a case where the statute deals with just that. This statute has seven factors. That means two things. One, regardless of the fact that a psychologist might be reluctant to say someone is at no risk to the community, that doesn't mean that the statute can't be understood and enforced as written, since there are six other factors to consider. And a trial court takes all of them into consideration to determine whether someone's at no risk. And two, this means that even though both psychologist reports consider the defendant to be at low risk, that doesn't mean that the trial court's conclusion is manifestly erroneous. Now no one is saying that the respondent should spend the rest of his life on the sex offender registry, assuming his good behavior continues. In fact, even the parents of the victims in their victim impact statement said that. But he's only 19. And basically, it's just too soon. Let me ask you, what if 10 years from now he comes back and repetitions the court? The legislature has not changed the statute and the standard is still no risk and the medical community has not come to the conclusion that one can issue a no risk diagnosis. Wouldn't he be on the same boat 10 years from now as he is now? Assuming he makes it on the other six factors? On the other six factors. I mean, I think if you couple a very low risk to re-offend and the other six factors also tend towards taking a person off this list, then I think that absolutely they can reach that. The question here, though, is I strongly disagree with counsel's opinion that there's nothing to support those other six factors in this case and I strongly urge this court to read those psychological reports. Because even though they come to an ultimate conclusion of low risk, they say things like his impulse control is questionable. While under many situations he can control his impulses, under stress he may not be able to do so. Now this really concerned the trial court because the respondent's living at home and working for his father and he really hasn't been exposed to any stressful situations. I mean, he spent, I believe this is correct, I believe he spent one month in JDOC and for the rest of his sentence he was on home arrest and then he was on probation. So he hasn't even been there. One of the reports says he's an action-oriented individual who, when bored, may act out and labial effect and poor self-control are probable. Another report says, this one really got me, defendant's actions were an isolated event. He molested one of these children 12 times and the other one two to four times. It also said that the defendant always tried to present himself in a favorable light and a superficially charming manner. Another thing that I find very strange is that his actions were not planned or calculated. This is a respondent who spent weeks, if not months, grooming these children. That same report says it's imperative that he not be in the presence of young children. So look beyond the ultimate conclusion of these reports. And that's what the trial court did here. I really am going to focus on Manifest Weight because I agree with you, Justice Goldberg. No, it's pretty easy to understand. And I think because you can have a finding of low risk by a psychologist, not no, but low, and then take the other factors that it's absolutely easy for a trial court to present it with the right facts to find no risk to the community. So those factors are, the first one is the risk assessment. Now, I just can't buy that because risk assessment is number one in the list of seven, that it's the most important factor. Nor can I buy the fact that because the trial court mentioned it first, it's the most important factor. The trial court said he reviewed the testimony of the witnesses, the arguments of the counsel, all of the evaluations, the victim impact statements, and the trial court file materials. He also reviewed the statutory elements. So he didn't just focus on the sex offender, excuse me, the reports. Factor number two is the sex offender history. Now, again, although this respondent only has one conviction, he repeatedly molested these toddlers for months. And again, if this had been an adult case, he wouldn't have one conviction, he'd have a dozen convictions. Or he could have, I'll put it that way. Evidence of the adjudicated delinquent's rehabilitation, obviously that's closely tied to factor one, but I would point out that this defendant never apologized.  We didn't know whether the parents were ready to accept an apology. That doesn't matter. If you're sorry, you say it. I mean, it's like shifting the burden to the parents of these molested children and saying, okay, I'm ready for you to apologize now. No, if you're sorry, you apologize. He's never apologized. The fourth factor is the age of the delinquent. Well, he was 13. He should have known better. In fact, he says, I thought I could get away with it. I mean, he's thought this out. He thought he could get away with it. He didn't want to put himself at risk with girls his own age, so he thought he could get away with this. That's old enough to know better. Number five, information related to the mental, physical, educational, and social history. He's going to college. He has a job. He has a place to live. Victim impact statements, these broke my heart. They are incredibly relevant to this case. Ripped apart these two families. These children remain frightened of teenagers, afraid to go to a friend's birthday party because there might be teenage boys there, afraid of accompanying her brother to a football game because there might be teenage boys there. The parents are afraid to let these children out of their sight. They rarely socialize with anybody else because they don't trust people anymore. They moved because to look across the street and see the house where this kid lived, they just couldn't deal with it. They believe that the respondent's still immature and that he needs more seasoning of years to fully appreciate the consequences of his action. They noted that he never apologized and that an apology would have been welcome at any time. EB has post-traumatic stress. One of the parents says that this kid is very adept at putting on a facade as a good, popular, and studious boy, but that this was just a front for the horrible sexual acts on multiple children. She described him as sneaky, controlling, and downright dangerous in grooming these children, and that's what he did. He groomed them. Factor seven is any other factors deemed relevant by the court. I'd run out of time if I told you all of the other things. The trial court found the respondent's actions disturbing and disgusting. He noted that he gained the trust of both the children and the parents. After doing so, he molested these children a number of times until he grew bored. Now he decided it was wrong. Now he was afraid of getting caught. He grew bored. He thought he could get away with it. Justice Goldenhush, you mentioned credibility. The trial court notes that all of these psychosexual reports relied greatly on this kid's credibility. Obviously, credibility becomes, then, very important. If he's credible, and as you noted, he found this young man to lack credibility. He noted that his testimony consisted of inconsistencies. He well-rehearsed, appeared to be less than forthright. This, I think, is crucial. Virtually all the information that he revealed was only after that information was first revealed by somebody else. The first child says, this happened to me. He says, well, yes, just once. Then she says, no, it happened a bunch of times. Well, yes, it did. But I didn't do it to anybody else. Then the second child comes along and said, he did it to me, too. Well, yes, there was a second child. But I only did it once. Well, then she says more. Well, then maybe it was more. Well, I didn't touch her. I just touched her through her clothes or something.  And this is a quote from the trial court. A careful reading of the documents connected with this case shows the respondent had a pattern of providing some information, but when additional information came to light, he would add to his version. He noted that the respondent wants to develop a dependent relationship with his therapist that could result in the misleading impression of rapid progress. The court also had doubts about the reliability of the testing. It was suggested that the respondent was attempting to skew the results and specifically found that Misty Lucas, the psychologist that initially dealt with the respondent, he found her testimony of minimal value because she hadn't been in close contact with him for over three years. Could I have one moment to correlate? Thank you, Your Honor. It's been made very clear in recent years by courts, by psychologists, by scientists, that the minds of teenagers and young adults are different. They're less mature. Their character is not as well formed as an adult's. Their traits are less fixed. That's what we're dealing with right now. All the state is asking, all these parents are asking is let the respondent come back in a few years when he's truly mature and when it might matter that he's on the assist list. Right now it doesn't matter. He's not being harmed by it at all. When these little girls have had a chance to grow up a little bit, let's talk about that. Thank you, Your Honor. Are there any questions? I don't believe there are. Thank you, counsel. You're welcome to have an extra minute, too. Thank you. Just briefly to touch on a few of the things that counsel brought up. You know, she mentioned that no one is saying he should spend the rest of his life on the registry, but that's exactly what's going to happen. Absent agreement or a change in the interpretation of this statute. We discussed this at length within the brief and through the transcripts. Realistically, nothing's going to change in 10 years. Unless it's for the worse, hypothetically. There's still going to be low risk, successful completion of services. Everything is going to stay exactly the same. If you look at the factors, we have the first factor. I don't mean to say it's the most important because it's listed first. I mean it was clearly the most important in this case. The court cited it within its conclusion. The experts found low risk. I'm finding low risk. I can't give that word a different meaning. But if you look at the second element, the history, there is no other criminal or disciplinary history for this petitioner other than this incident. Evidence of the juvenile delinquent's rehabilitation. Again, they used the word exemplary. There's been no evidence offering anything other than he successfully completed these services. The age of the adjudicated juvenile delinquent, he was 13 at that time. Information related to the adjudicated juvenile's delinquent mental, physical, education, and social history. No evidence was presented by anyone. In a negative light in this regard, we found out that he successfully completed school, never failed a class, is currently in college, has a job, again, never been in trouble. The victim impact statements are another element. Obviously, that's something for the court to consider. And they're presented by the victim's families. So that's well taken. However, if you look at the victim impact statements, nothing in them addresses his rehabilitation and how the petitioner has grown from this. And then any other factors deemed relevant, this would just go back to the legislative intent where they specifically discuss taking juveniles off this registry when they're preparing for college and their first jobs and things of that nature. So that's something for the court to consider as well. But in its opinion, the circuit court noted that the substantial progress the petitioner had made from those initial comments seven or eight years ago to the hearing last December and noted that, obviously, through those counseling and therapy, things have progressed. Now, the vast majority of statements cited by the state in their brief and here today in argument were statements the petitioner made back then before the conviction. The basis of the state's arguments are today, in essence, attempting to retry the petitioner for these crimes. But that's not the intent of the statute. The intent is to look how he's completed and progressed with those services and his likelihood of rehabilitation or his likelihood to recommit a crime. So, again, I've restated myself a couple of different times, but all of the evidence that was presented at this hearing, there was nothing that indicated he was a likelihood to recommit a crime or was a risk to the community. So, again, we'd ask respectfully that this case be reversed and remanded. Do you have any other questions for me this afternoon? I can't believe so. Thank you, Your Honor. Thank you, Your Honor. We appreciate the briefs and arguments of counsel to take the case under advisement. We're going to take a short recess and then the next case for argument is Ron v. Regional Office of Education. All rise.